# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | Case No. 06-40160-03-JAR |
| ) | Case No. 12-4047-JAR |
| MICHAEL B. JORDAN, ) | |
| ) | |
| Defendant/Petitioner. ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Michael B. Jordan's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 453). Petitioner claims that he was provided with ineffective assistance of counsel. The motion is fully briefed. After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without further evidentiary hearing because Petitioner has not met his burden in showing ineffective assistance of counsel.

## I. Legal Standards

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, "The judge who receives the motion must promptly examine it. If it plainly

appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3] In this case, the Court determines that the motion and files are conclusive in establishing that this petitioner is not entitled to relief on the grounds asserted in his motion.

Finally, Petitioner appears *pro se*. Therefore, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[4] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[5] It is not, however, "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[6] For that reason, the court shall not supply additional factual allegations to round out a

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[3] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[4] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[5] *Id*.

[6] *Id*.

petitioner's claims or construct a legal theory on his behalf.[7]

## II.     Statement of the Case and Procedural Background

The Indictments in this case alleged several counts associated with a cocaine distribution conspiracy. Petitioner was provided three different attorneys throughout the pretrial process. His first attorney, Mr. Miller, was appointed at his initial appearance on April 5, 2007. Mr. Miller moved to withdraw on April 1, 2008, because Petitioner expressed a lack of confidence in Mr. Miller's ability to represent him, and because Defendant had ignored Mr. Miller's admonition to not make direct contact with the United States Attorney handling this matter by demanding "proof of claims" under the Uniform Commercial Code. The Court granted Mr. Miller's motion on April 11, 2008, and appointed Mr. Brandon Bell to represent Petitioner.

Mr. Bell moved for a psychiatric exam, to which the government consented. At the hearing on that motion, on September 15, 2008, Petitioner moved for Mr. Bell's withdrawal as counsel. The Court deferred ruling on the motion to withdraw until a psychiatric evaluation could be completed. In the interim, Petitioner submitted *pro se* over 100 pages of documents for filing that included his handwritten statements that he "accepts the charges for value and consideration," citing the U.C.C.[8] On October 23, 2008, Mr. Bell moved to withdraw as counsel, indicating that Petitioner had stated he was not confident in Mr. Bell's ability or commitment to Petitioner, and that Petitioner was forced to involuntarily undergo a psychiatric examination due to Mr. Bell's efforts. On November 3, 2008, the Court granted the motion to withdraw and appointed Ms. Jacquelyn Rokusek as substitute counsel. The Court warned Petitioner that this

---

[7]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[8]Doc. 240.

would be his last appointed attorney.

On December 15, 2008, the Court orally ruled that Petitioner was competent to stand trial and set pretrial deadlines and a trial date. On April 3, 2009, Ms. Rokusek filed a Motion for Leave to Withdraw as Counsel of Record, indicating that Petitioner had not responded to her repeated efforts to communicate with him and review the voluminous discovery in the case. At the hearing on this motion, Petitioner stated that he did not need an attorney, and that he was "here for settlement and closure of the account."[9] When the Court asked Petitioner if he intended to communicate with counsel if the Court appointed one, Petitioner responded that he would have no reason to communicate with Ms. Rokusek or other counsel. Therefore, the Court granted Ms. Rokusek's motion to withdraw, and re-appointed her as standby counsel.

Trial was set to begin on September 15, 2009; the day before, the parties appeared for an in limine and status conference. The Court again advised Petitioner of his right to counsel and readvised him of the charges against him, and the maximum penalties that applied if he was convicted. Petitioner asked for additional time to confer with Ms. Rokusek, who ultimately negotiated a guilty plea on his behalf. On September 15, 2009, Petitioner pled guilty to Count One of the Second Superseding Indictment, charging him with conspiring "to possess with the intent to distribute and dispense 5 kilograms or more" of a mixture containing cocaine, in violation of 21 U.S.C. § 846. Petitioner entered into a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C), which included an agreement that Petitioner would be subject to a base offense level of 30 under the United States Sentencing Guidelines.

On December 9, 2009, Ms. Rokusek filed another motion to withdraw, representing the

---

[9] Mot. to Withdraw Hr'g Tr., Doc. 442, at 6.

Petitioner had retained a fourth attorney, Mr. Steve Rosel, to represent him during the sentencing process. The Court granted the motion.

At his sentencing hearing on June 1, 2010, Petitioner raised a number of objections to the Presentence Investigation Report ("PSIR"), challenging enhancements that were applied to his offense level—enhancements for obstruction of justice, role in the offense, and use of a firearm in furtherance of the conspiracy.[10] The Court agreed that Petitioner's base offense level should be set at 30, but denied Petitioner's objections to the offense level enhancements, finding that the total offense level was 35. The sentencing range was 188 to 235 months' imprisonment. The Court announced a tentative sentence of 210 months and Petitioner moved to withdraw his plea. Petitioner claimed Ms. Rokusek told him that he could not be sentenced to more than 135 months' custody under the plea agreement, and that he did not understand the terms of the plea agreement. The Court continued the sentencing hearing to July 2, 2010, to allow for an evidentiary hearing on the issue.

At the July 2 hearing, the Court heard testimony from Ms. Rokusek, Petitioner and Petitioner's family members as to whether or not Ms. Rokusek had promised Petitioner a sentence of no more than 135 months, and whether Petitioner understood the terms of the plea agreement. The Court found that Petitioner's testimony was not credible and found that Ms. Rokusek's testimony was entirely credible. The Court also examined the plea petition, the plea agreement, and the plea colloquy and found that the plea was knowingly and voluntarily made. The Court sentenced Petitioner to a total term of 210 months' imprisonment.

On direct appeal to the United States Court of Appeals for the Tenth Circuit, Petitioner

---

[10]The PSIR calculated his base offense level at 32, based on the drug quantity attributable to him.

argued that he was improperly assessed a two-level enhancement to his offense level for obstruction of justice, that Mr. Rosel was ineffective because he failed to challenge the obstruction enhancement, and that his guilty plea was not knowing and voluntary. On June 27, 2011, the Tenth Circuit affirmed this Court's decision that the plea was valid, and that the obstruction of justice enhancement was proper.[11] Petitioner timely filed his § 2255 Motion on May 7, 2012.

## III. Discussion

In his § 2255 motion, Petitioner claims that his counsel provided ineffective assistance, resulting in a deprivation of his rights. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[12] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[13] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[14] To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[15] This standard is "highly demanding."[16] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a

---

[11] 428 F. App'x 812 (10th Cir. 2011).

[12] U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586, 129 S. Ct. 1841, 1844 (2009).

[13] 466 U.S. 668 (1984).

[14] *Id.* at 688.

[15] *Id.* at 690.

[16] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

6

possible defense strategy."[17] In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[18] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[19]

Second, a defendant must show that his counsel's deficient performance actually prejudiced his defense.[20] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[21] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[22] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[23] When ineffective assistance of counsel is alleged to have occurred at the plea stage, the defendant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."[24]

---

[17]*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[18]*Strickland*, 466 U.S. at 689.

[19]*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[20]*Strickland*, 466 U.S. at 687.

[21]*Id*. at 694.

[22]*Id*.

[23]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[24]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[25] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[26]

Petitioner itemizes four claims of ineffective assistance of counsel in his motion: (1) Ms. Rokusek was ineffective for failing to advise Petitioner that there could be sentencing enchantments to the base offense level agreed upon in the plea agreement, and that he could be sentenced to more than 135 months' imprisonment; (2) Mr. Rosel was ineffective for failing to call defense witnesses to testify during the sentencing hearing; (3) the plea was not knowingly and voluntarily made because of Ms. Rokusek's improper advice; and (4) Mr. Miller, Mr. Bell, and Ms. Rokusek were ineffective for failing to challenge the wiretap authorization. Because Petitioner's third claim relates to the prejudice prong of the first claim of ineffective assistance, the Court addresses them together.

A. **Sentencing Consequences of the Plea Agreement**

Petitioner claims that counsel provided ineffective assistance by improperly advising him that he would receive no more than 135 months' imprisonment. He alleges that counsel never advised him of the applicable sentencing enhancements and the potential impact they would have on his sentence. Further, Petitioner argues that he "received ineffective assistance of counsel because counsel underestimated his sentencing exposure under a proffered plea deal leading him

---

[25]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[26]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

8

to accept a plea that sentenced him to a greater amount."[27] Because Petitioner allegedly was not advised of the potential sentencing consequence of his guilty plea, he maintains that the plea agreement was not entered into knowingly and voluntarily.

### 1. Deficient Performance

To demonstrate the first prong of *Strickland*, Petitioner makes the same claims that he raised at his July 2, 2010 sentencing hearing. The Court denied these claims, finding that Ms. Rokusek's testimony was entirely credible and that Petitioner's testimony was not credible.[28] Ms. Rokusek testified that she told Petitioner that he would be subject to enhancements and that he could be sentenced between ten years to life.[29] Further, Ms. Rokusek testified that she discussed a number of specific enhancements including those for obstruction, firearms, and leader/organizer, and that in her opinion Petitioner understood each enhancement.[30] She also testified that she did not tell Petitioner that 135 months was the maximum sentence he could receive, or that his sentence could not exceed eleven years, or that he would be out by the time his child was out of high school.[31] Finally, Ms. Rokusek testified that she did not promise, give a firm estimate, or guarantee that his sentence would be beyond a minimum of ten years.[32]

This Court also found that Petitioner's testimony that he was promised a 135-month

---

[27]Def.'s Mem. Of Law, Doc. 454 at 2.

[28]Sent. Hr'g., Doc. 447 at 8.

[29]*Id.* at 73-83.

[30]*Id.* at 80–81.

[31]*Id.* at 78.

[32]*Id.* at 83.

9

sentence was not credible because of "inconsistencies and things that make absolutely no sense to the Court if the Court were to accept his testimony."[33] Petitioner presented eyewitness testimony that the Court gave very little weight, finding that witnesses were present during plea negotiations for only about 30 minutes and that the witnesses, "probably heard things out of context."[34] The Court also recognized that Petitioner had discussions with Ms. Rokusek about how his base offense level would be affected by drug quantities because he testified "that it was important to him that the plea agreement and the plea reflect a plea of 3.5 to 5 kilograms."[35] The Court acknowledged that Ms. Rokusek had successfully argued down Petitioner's base offense level from 32 down to 30, which was the base offense level ultimately agreed to in the binding plea agreement.[36]

The Court's previous finding that Ms. Rokusek's testimony is credible rebuts Petitioner's claims that her performance was deficient—the Court has already made extensive findings that she did not promise him that he would receive no more than 135 months' imprisonment and that she did advise him of potential sentencing enchantments.

Even if this Court were to accept as true that Ms. Rokusek promised Petitioner that he could be sentenced to no more than 135 months of imprisonment, the Tenth Circuit has held, "a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally

---

[33] *Id.* at 133.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 134.

deficient performance rising to the level of ineffective assistance of counsel."[37] Thus, Petitioner has not indicated any conduct of his counsel that failed to meet an objective standard of reasonableness. Accordingly, this Court finds that Petitioner has failed to establish the first prong of *Strickland.*

### 2. Prejudice

Even if counsel's performance was deficient, Petitioner must show that the conduct actually prejudiced his defense, which he has failed to do here. The plea colloquy informed Petitioner of his potential sentence and also insured that Petitioner was entering the plea knowingly and voluntarily. The plea colloquy indicates Petitioner was informed and understood how the sentencing enhancements would apply to his case and the Court informed Petitioner that no one could predict the outcome of his case.

The Court during the sentencing hearing indicated a number facts that it considered in finding that Petitioner entered into the plea knowingly and voluntarily.

> So based on all of these things I find that the plea was knowingly and voluntarily made and with full information and with the close assistance of counsel who gave the defendant good and competent and experienced advice and counsel negotiated significantly for him and helped him secure a favorable plea agreement considering what he was facing if this case went to trail.[38]

The Court relied heavily on the plea colloquy in finding that Petitioner entered into the plea knowingly and voluntarily. During the plea colloquy, the Court asked Petitioner if he "made the decision voluntary and of [his] own free will," to which he responded, "Yes."[39]

---

[37]*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988); *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970)).

[38]Sent. Hr'g., Doc. 447 at 136.

[39]Change of Plea Hr'g Tr., Doc. 444, at 8.

The Court went on to discuss the terms of the plea agreement and discussed how the base offense level would be used to calculate his sentence, which Petitioner indicated he understood:

> THE COURT: All right. So this would be a binding plea agreement. The Court would be bound to—when you say a base offense level of 30, that would be under the sentencing guidelines the Court would be bound to start the calculation at a level 30 and go from there—
>
> MR. HOUGH: Yes, ma'am.
>
> THE COURT: —such as go down from there to apply acceptance of responsibility for example.
>
> MR. HOUGH: (Shakes head up and down).
>
> THE COURT: And I know that this particular offense is in the mandatory minimum category. But, for example, should Mr. Jordan qualify for a safety valve, and I don't know if he does, but the Court would be allowed to apply the safety valve, et cetera?
>
> MS. ROKUSEK: Yes, Your Honor.
>
> THE COURT: Okay. All right. Understood.
>
> MR. HOUGH: Judge, it just impacts the base offense level, not the adjusted offense level or the total offense level.
>
> THE COURT: Okay. Understood.
>
> MR. HOUGH: Thank you.
>
> THE COURT: All right.
> So, Mr. Jordan . . . is there anything that you don't understand or anything that you disagree with that the prosecutor just said?
>
> . . .
>
> MR. JORDAN: No.[40]

The Court then explained the importance of the type and quantity of drugs on the offense

---

[40]*Id.* at 11-12.

12

level imposed. Additionally, the Court discussed the relevant conduct guideline and how it could impact his sentence, as well as the impact on his sentence if he used or carried a firearm. After explaining these guidelines and how they could affect Petitioner's sentence the Court explained:

> So for that reason it's impossible for me to tell you with any certainty as we sit here now what sentence you'll receive because we have to go through this whole presentence process. It's impossible for anyone to predict to you with certainty what sentence you'll receive. The most we can tell you with certainty is what the maximum or minimum sentence is under the statute that you're pleading guilty to. We can tell you that much.[41]

The Court also explained to Petitioner that the conspiracy count to which he was pleading carried a minimum sentence of ten years and a maximum sentence of life imprisonment.

The Court also discussed the Petition to Enter Plea with petitioner. The Court asked Petitioner, "And do you understand what the petition to enter plea says and what its purpose is," to which Petitioner responded, "Yes."[42] In the plea petition, which was signed under oath, Petitioner agreed and swore that his counsel informed him that his plea of guilty could subject him to a minimum sentence of ten years and a maximum sentence of life.[43] Further, Petitioner swore under oath that "[m]y attorney did discuss how the Sentencing Guidelines may apply in my case," and that the sentence he receives is "solely a matter within the control of the Judge."[44] Finally, at the end of the plea petition, Petitioner swore that he was offering his plea "freely and

---

[41]*Id.* at 20.

[42]*Id.* at 29.

[43]Plea Pet., Doc. 340 at 2 ¶ 10.

[44]*Id.* at 3 ¶ 16.

13

voluntarily."[45]

The plea agreement also evidences that Petitioner did knowingly and voluntarily enter into the plea agreement. This Court noted that "Mr. Jordan was intimately involved in the plea negotiations" because he insisted on section 5(c) to be part of the plea agreement.[46] The Court explained:

> [Section 5(c) is] not something a licensed attorney would insist on because that particular provision is in accordance with the position Mr. Jordan has taken from the very day this case was filed, or at least the first time he's appeared in court, and that is that he is a so-called sovereign citizen and that there's some animal called the redemption theory that he could present to the jury and that somehow the Court doesn't have jurisdiction over him. . . . The fact that this is in the plea agreement tells me that Mr. Jordan was actively involved in the negotiations of the plea agreement. [47]

In considering all of the facts stated above, the Court found that the plea was knowingly and voluntarily made. For the same reasons the Court denied Petitioner's motion to withdraw his guilty plea, Petitioner's claim that he was promised no more than 135 months of imprisonment fails to meet the second prong of *Strickland*. In the plea colloquy, the plea agreement, and the plea petition Mr. Jordan acknowledged that no one could predict his sentence with any certainty. Because Petitioner was aware that his sentence could not be predicted with any certainty, the end result of the plea process was not affected by the alleged advice from counsel. Even if Ms. Rokusek had promised that Petitioner would receive only 135 months of imprisonment, that advice did not actually prejudice his defense because the documents he

---

[45]*Id.* at ¶ 23.

[46]Sent. Hr'g., Doc. 447, at 125.

[47]*Id.*

14

signed, and the Court's plea colloquy assured that he understood the sentencing process, and that he understood the base offense level did not dictate his ultimate sentence.[48]

### B. Failing to Call Witnesses at the Sentencing Hearing

Petitioner next alleges that Mr. Rosel was ineffective for failing to call defense witnesses at his sentencing hearing, a crucial stage of the proceedings. He claims that witnesses were willing and wanting to testify at his sentencing hearing and, had they been allowed to testify, the outcome would have been different.

It is Petitioner's burden to show that defense counsel's performance was deficient and actually prejudiced his defense. "Habeas corpus is a civil proceeding and the burden is on the petitioner to show by a preponderance of the evidence that he is entitled to relief."[49] Even though the Court is to construe a defendant's *pro se* motion liberally, the Court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."[50]

Here, Petitioner's claim fails to assert facts that would establish either prong of *Strickland*. Petitioner offers conclusory statements that witnesses had exculpatory evidence that they would have provided at the sentencing hearing. But Mr. Rosel did call some family

---

[48]Petitioner alleges that pages 3-5 of the plea agreement were missing in his copy of the plea agreement. However, Petitioner signed the Plea Agreement filed with the official record, acknowledging that the plea agreement was read to him, that he understood the terms of the plea agreement, and that he agreed it is true and accurate. Further, he stated on the record that the plea agreement embodied each and every term of agreement between the parties. Finally, during the plea colloquy, Petitioner acknowledged that the plea agreement was in fact the entire agreement.

[49]*Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964).

[50]*United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

15

members to testify at the sentencing hearing. Petitioner fails to identify the witnesses he believes should have been called instead, and Petitioner does not provide a proffer of their testimony or explain how they would have changed the outcome of the present action. The Court found the witness testimony that was presented was neither credible nor exculpatory.

Accordingly, Petitioner has only offered conclusory allegations to support his claim for relief. Without any factual assertion that the outcome would have been different if the witnesses were allowed to testify or that counsel's performance was deficient, Petitioner cannot meet either prong of *Strickland.*

### C. Failing to Challenge the Validity of the Wiretap

Petitioner's final claim is that he received ineffective assistance of counsel because counsel failed to challenge the wiretap authorization. Petitioner maintains that he had doubts about the validity of the wiretap and that the wiretap could have contained false information. He alleges that he requested each of his three appointed attorneys to challenge the wiretap and they all failed to do so.

Petitioner has the burden to illustrate that counsel performed deficiently and that the performance actually prejudiced Petitioner by affecting the outcome of the case. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."[51]

---

[51] *Kimmelman*, 477 U.S. at 375.

Petitioner has failed to show that a wiretap challenge would have been meritorious. He argues that the wiretap affidavit could have contained false information, and that he believes that the wiretap was improperly issued. Further, he alleges that the information supplied was insufficient to support authorization of a wiretap, but points to no factual basis to support his claim. Petitioner has also failed to indicate how the exclusion of the evidence would have affected the outcome of the case other than merely indicating that it was a key element of the proceedings.

Thus, because Petitioner has presented only conclusory allegations, he fails to illustrate that a wiretap challenge would have been meritorious, or that the exclusion of the wiretap evidence would have affected his decision to plead guilty. Accordingly, Petitioner has failed to show that counsel provided ineffective assistance and that such assistance actually prejudiced his case.

The Court finds that the record conclusively demonstrates that Petitioner is not entitled to relief on any of his ineffective assistance of counsel claims.

### IV.   Certificate of Appealability

Rule 11 of the of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[52] A petitioner satisfies this burden if "reasonable jurists

---

[52] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

would find the district court's assessment of the constitutional claims debatable or wrong."[53] When the adverse finding is based on procedural grounds, the petitioner must also show "'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"[54] While Petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA, he must "prove something more than the absence of frivolity or the existence of mere good faith."[55] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[56] For the reasons detailed above, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 453) is **DENIED**.

**IT IS FURTHER ORDERED** that the government's Motion for Extension of Time to Respond (Doc. 456) is **GRANTED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS SO ORDERED**.

---

[53] *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[54] *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[55] *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[56] *Id.* at 336.

Dated: January 29, 2013

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE